**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

Case No: 25 Civ. 5425 (GBD)

LOUISE BLOUIN,

Plaintiff,

-against-

VANITY FAIR, CONDE NAST, MELANIE BONVICINO, JGB CAPITAL L.P., BAY POINT
CAPITAL PARTNERS II L.P., and JOHN ALLERDING,

Defendants,

**MEMORANDUM OF LAW IN OPPOSITION**

**HANTMAN & ASSOCIATES**
Attorneys for Plaintiff
Robert J. Hantman, Esq.
1120 Avenue of the Americas, 4th Floor
New York, NY 10036
Tel: (212) 684-3933
rhantman@hantmanlaw.com

# TABLE OF CONTENTS

TABLE OF ATHORITIES ...................................................................................................... ii

INTRODUCTION AND PRELIMINARY STATEMENT ...................................................... 1

STATEMENT OF FACTS ...................................................................................................... 1

    *i.*    *What is True* ............................................................................................................. 1

    *ii.*   *What is Not True* ...................................................................................................... 2

THE STANDARD ................................................................................................................... 3

I. THE ARTICLE IS DEFAMATORY BECAUSE IT IS UNTRUE ...................................... 4

  A.   Defendant's Research is Unreliable and Distracts from the Fact Their Publications Were Untrue ................................................................................................................................... 7

  B.   The Defamation with Actual Malice Claim Should Remain Because It Is Properly Pled 11

    *i.*    *Actual Malice is Plausibly Alleged* ...................................................................... 11

    *ii.*   *The First and Second Claims Should Remain Because §74 of the Human Rights Law Does Not Apply* ................................................................................................................. 17

II. THE NON-DEFAMATION CLAIMS ARE VIABLE ......................................................... 21

CONCLUSION ....................................................................................................................... 24

i

# TABLE OF ATHORITIES

Cases

§ 3:13. Tortious interference with contractual relations—Checklist of elements, 14 N.Y.Prac., New York Law of Torts § 3:13 ................................................................................. 22

Alianza Dominicana, Inc. v Luna, 229 AD2d 328, 329 [1st Dept 1996] .................................... 15

Amaranth LLC v J.P. Morgan Chase & Co., 71 AD3d 40, 48 [1st Dept 2009] .......................... 24

Arts4All, Ltd. v Hancock, 5 AD3d 106, 110 [1st Dept 2004] ..................................................... 15

Ashcroft v Iqbal, 556 US 662, 678 [2009] .................................................................................. 11

Brimelow v. New York Times Co., 2021 WL 4901969, 1 (2d Cir. Oct. 21, 2021) ..................... 15

Campbell v New York Evening Post, 245 NY 320, 328 [1927] .................................................... 11

Carroll v Trump, 151 F4th 50, 71 [2d Cir 2025] ......................................................................... 13

Carroll v Trump, 151 F4th 50, 72 [2d Cir 2025] ......................................................................... 13

Chau v Lewis, 935 F Supp 3d 644, 659 [SDNY 2013] ................................................................ 20

Chau v Lewis, 935 F Supp 3d 644, 660 [SDNY 2013] ................................................................ 21

Church of Scientology Intern. v. Eli Lilly & Co., 778 F.Supp. 661, 666 (S.D.N.Y.1991) ............. 4

Cianci v New Times Pub. Co., 639 F2d 54, 68 [2d Cir 1980] ..................................................... 18

Cianci v New Times Pub. Co., 639 F2d 54, 69 [2d Cir 1980] ..................................................... 19

Daniels v St. Luke's-Roosevelt Hosp. Ctr., 02 CIV. 9567 (KNF), 2003 WL 22410623, at *5 [SDNY Oct. 21, 2003] ........................................................................................................ 4, 8

Dubai Islamic Bank v Citibank, N.A., 126 F Supp 2d 659, FN 14 [SDNY 2000] ...................... 14

Edwards v Natl. Audubon Soc., Inc., 556 F2d 113, 120 [2d Cir 1977] ....................................... 18

ExpertConnect, LLC v Fowler, 18 CIV. 4828 (LGS), 2020 WL 3961004, at FN 1 [SDNY July 13, 2020] ........................................................................................................................... 23

Frank v. National Broadcasting Co., Inc., 119 A.D.2d 252, 506 N.Y.S.2d 869 (2d Dep't 1986)... 4

Franklin v Daily Holdings, Inc., 135 AD3d 87, 89 [1st Dept 2015] .............................................. 6

Franklin v Daily Holdings, Inc., 135 AD3d 87, 94 [1st Dept 2015] .......................................... 5, 6

Friedl v City of New York, 210 F3d 79, 83 [2d Cir 2000] ........................................................... 17

Galella v Onassis, 487 F2d 986, 995 [2d Cir 1973] .................................................................... 21

Goldfarb v Channel One Russia, 663 F Supp 3d 280, 288 [SDNY 2023] ..................................... 9

Goldfarb v Channel One Russia, 663 F Supp 3d 280, 298 [SDNY 2023] ..................................... 9

Gu v. The Verge, 2023 WL 4599522, at *13 (Sup. Ct. N.Y. Cty. July 18, 2023) ....................... 14

Higgins v Goyer, 162 AD3d 1191, 1194 [3d Dept 2018] .............................................................. 5

Ilyin v Avon Publications, Inc., 144 F Supp 368, 374 [SDNY 1956] .......................................... 22

Kelly v Schmidberger, 806 F2d 44, 46 [2d Cir 1986] ................................................................ 4, 8

Kforce, Inc. v Alden Personnel, Inc., 288 F Supp 2d 513, 516 [SDNY 2003] .............................. 8

Khalil v Fox Corp., 630 F Supp 3d 568, 581 [SDNY 2022] ....................................................... 18

Kronos, Inc. v AVX Corp., 81 NY2d 90, 94 [1993] .................................................................... 22

Lasky v Am. Broadcasting Companies, Inc., 631 F Supp 962, 970 [SDNY 1986] ...................... 19

Lasky v Am. Broadcasting Companies, Inc., 631 F Supp 962, 971 [SDNY 1986] ...................... 18

Lawyers' Co-Operative Pub. Co. v W. Pub. Co., 32 AD 585, 590 [4th Dept 1898] ................... 11

Le Mistral, Inc. v Columbia Broadcasting Sys., 61 AD2d 491, 494 [1st Dept 1978] ................. 22

Mellen v Athens Hotel Co., 153 AD 891, 891 [1st Dept 1912] .................................................. 15

Neuschotz v Newsday Inc., 12 Misc 3d 1199(A) [Sup Ct 2006] ................................................. 15

Palin v New York Times Co., 940 F3d 804, 810-11 [2d Cir 2019] ............................................... 4

People by James v Trump, 237 NYS3d 443, 511-12 [1st Dept 2025] .......................................... 17

People ex rel. Spitzer v Grasso, 21 AD3d 851, 853 [1st Dept 2005] ............................................ 15
Portnoy v Insider, Inc., CV 22-10197-FDS, 2022 WL 16748583, at *1 [D Mass Nov. 7, 2022] 10
Roche v Claverack Co-op. Ins. Co., 59 AD3d 914, 917 [3d Dept 2009] ...................................... 7
Ruston v Town Bd. for Town of Skaneateles, 610 F3d 55, 58-59 [2d Cir 2010]........................... 3
Trump v CASA, Inc., 606 US 831, 908 [2025] ........................................................................... 22
Yellow Book of NY L.P. v Dimilia, 188 Misc 2d 489, 490 [NY Dist Ct 2001] .......................... 14
Zuckerbrot v Lande, 75 Misc 3d 269, 294 [Sup Ct 2022] ............................................................ 5

## Statutes

§74 of New York's Civil Rights Law .......................................................................................... 17
Fed.R.Civ.P. 8 ............................................................................................................................. 4
Second Circuit Local Rule 32.1.1.(c) ......................................................................................... 15

## Other Authorities

§ 1:42. Defamation—Checklist of elements, 14 N.Y.Prac., New York Law of Torts § 1:42 ........ 4
§ 1:43. Defamation—False statement, 14 N.Y.Prac., New York Law of Torts § 1:43 ................ 5
§ 1:46. Defamation— Per se defamation and damages, 14 N.Y.Prac., New York Law of Torts §
    1:46 ...................................................................................................................................... 7
Earl K. Cantwell, The Controversy over Media Reporting of Public Disputes, NY St BJ, April
    1988, at 22, 23 ..................................................................................................................... 18

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LOUISE BLOUIN,

                             Plaintiff,

v.

**Case No: 25 Civ. 5425 (GBD)**

VANITY FAIR, CONDE NAST, MELANIE
BONVICINO, JGB CAPITAL L.P., BAY
POINT CAPITAL PARTNERS II L.P., and
JOHN ALLERDING,

                             Defendants,

## PLAINTIFF LOUISE BLOUIN'S OPPOSITION TO CONDE NAST AND VANITY FAIR'S MOTION TO DISMISS

### INTRODUCTION AND PRELIMINARY STATEMENT

The Defendants ("Conde Nast and Vanity Fair") motion to dismiss is nothing more than an attempt to mask their calculated and sensationalized journalistic attack on the Plaintiff. This memorandum of law dissects the Defendants' motion to dismiss, which ignores the sensational and deceptive titles of their stories, the hostile framing, and the overall narrative that was clearly designed to imply personal financial ruin and social disgrace of Plaintiff Blouin. The Plaintiff is suing because the Defendants knowingly published a false and destructive narrative that has directly damaged her reputation and business prospects as an internationally recognized entrepreneur. The Complaint is well-pleaded and should be sustained.

### STATEMENT OF FACTS

*i. What is True*

Plaintiff Louise Blouin is an internationally recognized entrepreneur, publisher, and investor with a professional reputation built on her expertise in financial structuring and fund management. This action arises from the knowingly false, defamatory, and malicious publication

1

by Defendants *Vanity Fair* and Condé Nast of an article on July 1, 2024, entitled, "How Art Mogul Louise Blouin Lost Her Fabled Hamptons Estate."

### ii. What is Not True

The core false narrative created by the Defendants' article is that the Plaintiff is personally financially insolvent, personally bankrupt, and has "fallen from grace" due to personal financial mismanagement and irresponsibility. The subject of the article—the court-ordered sale of the La Dune estate—involved a complex corporate legal process, not the Plaintiff's personal finances. The property was owned by affiliated corporate entities, Brickchurch and Aberdeen Enterprises, and the sale was the result of a corporate Chapter 11 restructuring intended as a strategic move to satisfy corporate creditors.

The article intentionally and maliciously blurred the critical distinction between this corporate restructuring and the Plaintiff's personal financial status. The headlines and framing ("Lost Her Fabled Hamptons Estate," and the French translation implying her "downfall") were selected to convey the false and defamatory implication of personal ruin.

Defendants' publication was made with actual malice and a reckless disregard for the truth. Prior to publication, Plaintiff provided Defendants with extensive advance documentation, facts, and corrections that clearly explained the corporate nature of the debt, the legal proceedings, and the sale. Defendants deliberately ignored this verified evidence.

Instead of publishing the truth, Defendants relied on and quoted hostile, financially conflicted sources, including the lawyer for the opposing lender (Defendant John Allerding) and Defendant Melanie Bonvicino, despite having been warned of their significant financial and reputational conflicts with the Plaintiff.

2

The article contained actionable statements of fact disguised as opinion, notably the anonymous quotation from a "banker" who reviewed her refinancing request, alleging the Plaintiff was "liv[ing] above [her] means." This professional accusation of financial irresponsibility was calculated to appear as an informed factual judgment.

The publication of the defamatory article constituted a specific wrongful act intended to harm the Plaintiff's identifiable prospective business dealings. At the time of publication, the Plaintiff was actively seeking to raise approximately $400 million for a new real estate fund, and the article was directly intended to sabotage her ability to secure this investment capital.

## THE STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.; see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 565–66, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)." [Ruston v Town Bd. for Town of Skaneateles, 610 F3d 55, 58-59 [2d Cir 2010]](#).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule 12(d), therefore, presents district courts with only two options: (1)

"the court may exclude the additional material and decide the motion on the complaint alone" or (2) "it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." Palin v New York Times Co., 940 F3d 804, 810-11 [2d Cir 2019].

## I. THE ARTICLE IS DEFAMATORY BECAUSE IT IS UNTRUE

The Defendant argues the article is not defamatory because a single, contradictory quote deep within the text mentions the Plaintiff didn't file for personal bankruptcy, and that the property sale was a corporate matter. This argument does not address the implications of the article, omits defamatory and factually untrue language, and in particular, Vanity Fair and Conde Nast's statements about the sale of La Dune that are untrue.

The elements of defamation are "1) A false and injurious statement of fact concerning the plaintiff. 2) Publication to a third party by the defendant. 3) Depending on the status of the plaintiff and defendant, made with malice, recklessness, gross negligence or made negligently or innocently. 4) Special damages or presumed harm in *per se* actionable cases. § 1:42. Defamation—Checklist of elements, 14 N.Y.Prac., New York Law of Torts § 1:42(*Citing* Church of Scientology Intern. v. Eli Lilly & Co., 778 F.Supp. 661, 666 (S.D.N.Y.1991); Eckhaus v. Alfa-Laval, Inc., 764 F.Supp. 34, 37 (S.D.N.Y.1991); Frank v. National Broadcasting Co., Inc., 119 A.D.2d 252, 506 N.Y.S.2d 869 (2d Dep't 1986).).

"Pursuant to Fed.R.Civ.P. 8, a complaint is not required to contain the defamatory statements *in haec verba* as long as it affords defendant sufficient notice of the communications complained of to enable him to defend himself." Daniels v St. Luke's-Roosevelt Hosp. Ctr., 02 CIV. 9567 (KNF), 2003 WL 22410623, at *5 [SDNY Oct. 21, 2003]; *See also* Kelly v Schmidberger, 806 F2d 44, 46 [2d Cir 1986]("In federal diversity cases such as this, procedural

matters are governed by the Federal Rules of Civil Procedure, "the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P.").

The first two elements are neatly covered with the article's title: "How Art Mogul Louise Blouin Lost Her Fabled Hamptons Estate." Dkt No. 1, ¶17. This is not a nuanced title. It is a declaration of personal failure. "The test to establish falsity is whether the statement as published would have a different effect on the mind of the reader or listener from that which the pleaded truth would have produced." § 1:43. Defamation—False statement, 14 N.Y.Prac., New York Law of Torts § 1:43(*Citing* Franklin v Daily Holdings, Inc., 135 AD3d 87, 94 [1st Dept 2015]). This declaration of failure is compounded by the French headline which implied her financial downfall or ruin. Dkt No. 1, ¶¶5, 18, 19. The clear implication to any reader—a false one—is that the Plaintiff personally defaulted on her home mortgage and is a financial wreck. *Id* at ¶¶18, 19, 39, 42. An honest report about a corporate asset sale to satisfy corporate creditors does not require such inflammatory, reputation-damaging framing.

The Appellate Division, Third Department found a similar statement that "alleged gross improper… conduct that called into question plaintiff's ability and fitness" stated falsity and survived a motion to dismiss. Higgins v Goyer, 162 AD3d 1191, 1194 [3d Dept 2018].  Supreme Court also found statements adequately pled the falsity element where the "gravamen of Plaintiffs claim" were "statements falsely asserted or implied" by a defendant that "did more than mislabel… they misrepresented." Zuckerbrot v Lande, 75 Misc 3d 269, 294 [Sup Ct 2022]. Here, the statements pled, which include the French and English titles of the article both make false implications that Blouin is a financial liability and was personally unable to keep the Le Dune estate.

With respect to the falsity element, the way a statement is presented matters. "Courts typically compare the complained-of language with the alleged truth to determine whether the truth would have a different effect on the mind of the average reader. …the statement could [or could] not have produced a worse effect on the mind of a reader than the truth as alleged by plaintiff." Franklin v Daily Holdings, Inc., 135 AD3d 87, 94 [1st Dept 2015]. In *Franklin*, a DJ sued a newspaper for libel for using only a part of his quote referencing a fight at a night club and making it appear that he was a "gun-toting psychopath with an itchy trigger finger." Franklin v Daily Holdings, Inc., 135 AD3d 87, 89 [1st Dept 2015].

Similarly, here, the language of the French and English titles and statements of anonymous third parties stating that "Plaintiff had lived "above her means" and that her estate resembled "Grey Gardens" did not tell the full story. Dkt No. 1, ¶61. If Vanity Fair and Conde Nast told the truth, as pled by plaintiff, showing the "(1) the full court docket showing all claims were corporate and not personal, (2) proof of over $26 million in equity withdrawn before sale, and (3) evidence that the Chapter 11 plan was confirmed and all debts satisfied" *inter alia*, their articles would have had a neutral or positive effect the mind of the reader. Dkt. No 1, ¶26. To show the harmful light the articles case on Blouin, she pleads that private equity firms withdrew their financing offers based on "reputational risk arising from the Vanity Fair article," that her adversaries cited the article in litigation against her; and that a UN affiliated NGO withdrew her from a speaking engagement, "citing reputational uncertainty" based on "recent media coverage." Dkt. No. 1, ¶¶37-43.

With respect to the next two elements, the allegation of publication is satisfied by ¶37 of the Complaint and the element of actual malice is discussed *Supra* at B, *ii*.

The first cause of action pleads defamation *per se* so it is unnecessary to plead special damages. Defamation *per se* is adequately pled as shown *supra* at A.

    With respect to the second cause of action, Defamation with Actual Malice, the special damages standard is clear. "Special damages must consist of the loss of something having economic or pecuniary value which "must flow directly from the injury to reputation caused by the defamation, not from the effects of defamation," and it is settled law that such damages must be fully and accurately identified "with sufficient particularity to identify actual losses." § 1:46. Defamation— Per se defamation and damages, 14 N.Y.Prac., New York Law of Torts § 1:46 (*Citing* Roche v Claverack Co-op. Ins. Co., 59 AD3d 914, 917 [3d Dept 2009] – special damages shown where attorney sued other attorney for defamation, alleging they provided falsified memoranda to insurance company resulting in loss of coverage). Similarly to *Roche*, here, in Dkt. No. 1, ¶¶37-43 the complaint alleges the specific harms that resulted from Conde Nast and Vanity Fair's article. Therefore the defamation claims should survive the motion to dismiss.

## A.  Defendant's Research is Unreliable and Distracts from the Fact Their Publications Were Untrue

Defendant's research is a jumble of non-precedential cases and red herrings designed to distract from the fact that Vanity Fair and Conde Nast lied about Ms. Blouin. From the beginning Defendants make erroneous citations about defamation *per se*. They do not cite the entire rule in *Kforce, Inc*, the case they cite for the position that a plaintiff must plead that specific defamatory words are actionable on their face because they disparage a person "in the way of their office, profession, or trade" for defamation *per se* to survive a motion to dismiss. Defendants omit the italicized language (emphasis by the Court) of their quote in *Kforce*. The quote actually reads: "Defamation *per se* has been defined both as statements that cast doubt on a particular quality at the very heart of a profession and statements that impugn the basic integrity of a business. Thus,

a writing which *tends* to disparage a person in the way of his office, profession or trade is defamatory *per se* and does not require proof of special damages." Kforce, Inc. v Alden Personnel, Inc., 288 F Supp 2d 513, 516 [SDNY 2003](cleaned up)[1]. The "casts doubt" language, as well as the "*tends*" language from *Kforce* helps Blouin. This language shows that Defendants contention, that the exact language that Plaintiff cites must be *prima facie* actionable - without regard to implication, is unfounded.

 *Daniels v. St Luke's-Roosevelt Hosp. Ctr.,* the very case that Defendants cite for their position that defamation *per se* may not be based on implication, actually states the opposite. *Daniels* reveals the correct standard to determine whether language is defamatory by implication. Defendants incorrectly rely on the New York standard for pleading, CPLR 3016. The correct standard for pleading defamation *per se* in federal court is under FRCP 8. "Pursuant to Fed.R.Civ.P. 8, a complaint is not required to contain the defamatory statements *in haec verba* as long as it affords defendant sufficient notice of the communications complained of to enable him to defend himself." Daniels v St. Luke's-Roosevelt Hosp. Ctr., 02 CIV. 9567 (KNF), 2003 WL 22410623, at *5 [SDNY Oct. 21, 2003]; *See also* Kelly v Schmidberger, 806 F2d 44, 46 [2d Cir 1986]("In federal diversity cases such as this, procedural matters are governed by the Federal Rules of Civil Procedure, "the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P."). This case is a diversity case, therefore, FRCP Rule 8 applies. Dkt No. 1, ¶15. Therefore, Defendant's first argument is squarely refuted.

---

[1] The new "cleaned up" citation convention for making quotes and citations more clear has been adopted by the US Supreme Court in Brownback v King, 592 US 209, 215 [2021] and The Bluebook in Rule 5.3 B5.3 Modifying Quotations and Citations for Clarity, The Bluebook (Oct. 29, 2025 at 11:00 EST). Although "cleaned up" is technically not bluebook proper, it is still used by many courts. *See eg* United States v James, 151 F4th 28, 47 [2d Cir 2025].

In cases of defamation by implication, "heightened standards do not apply… to a case… of allegedly false statements of verifiable fact, with inferences flowing from those facts." Goldfarb v Channel One Russia, 663 F Supp 3d 280, 298 [SDNY 2023]. In Goldfarb Plaintiff-microbiology professor at Columbia University and close associate and friend of Alexander Litvinenko, a former officer of the Russian Federal Security Service and defector to the UK, brought suit against Defendant Channel One Russia who aired interviews where Walter Litvinenko, Alexander's father, accused plaintiff, by implication, of *inter alia*, being a member of the CIA, murdering Alexander Litvinenko and murdering his own wife. Id.

*Biro*, a case that Defendants rely on significantly, is distinguishable. SDNY held that *Brio* standard did not apply in *Goldfarb* because the statements were "verifiable" and that "when considered in context, the statements Channel One broadcast [made] were statements of fact rather than of opinion." Goldfarb v Channel One Russia, 663 F Supp 3d 280, 288 [SDNY 2023].

Here, like in *Goldfarb*, Blouin cites the implication and, *considered in context* the verifiable statements made which Defendants used to defame her fall under the *Goldfarb* standard. Dkt No. 1, ¶3, 19, 22, 25, 42, 46, 55. (*Eg* "The article also stated, "Like Trump, Blouin has never filed for personal bankruptcy," a phrase that, though technically true, was used in a misleading way to imply the opposite. It falsely suggested that Plaintiff had been financially reckless and was only narrowly avoiding personal bankruptcy."). Contrary to Defendant's arguments, these specifically pled facts sustain the Plaintiff's defamation by implication claims in their first claim, to the extent that implication is raised.

Defendants rely on *Portnoy* to argue the article does not make a defamatory implication. This case is clearly distinguishable. First, *Portnoy* is a case from outside this Circuit. It is not

precedent bound by *Goldfarb*. Second, Mr. Portnoy, of pizza review[2] and Barstool Sports

infamy, is nothing like the Plaintiff in this matter, who actually has a reputation to uphold and

suffered severe business and reputational damage from Conde Nast and Vanity Fair's article. For

example, no matter how interesting Mr. Portnoy's Barstool Sports was at presenting "sports

media and pop culture," his reputation cannot be compared to Ms. Blouin's. Ms. Blouin is an

"internationally recognized entrepreneur, publisher, and investor" who was "invited to speak at a

UN affiliated NGO," a privilege that a offensive shock jock like Mr. Portnoy would never enjoy.

*Compare* Portnoy v Insider, Inc., CV 22-10197-FDS, 2022 WL 16748583, at *1 [D Mass Nov. 7,

2022] *with* Dkt No. 1, ¶¶1, 42.

      Additionally, In FN 4 of Defendant's brief, they argue that "a headline cannot as a matter

of law be defamatory where it is a "fair index" of the substantially accurate information in the

Article." Again, Defendants incorrectly cite this rule. The rule actually states that:

"[d]efamatory head lines are actionable though the matter following is not, unless they fairly
index the substance of the matter to which they refer, and . . . unless they are a fair index of the
matter contained in a truthful report . . . . If the headline is a fair index of an accurate article, it is
not actionable." Schermerhorn v. Rosenberg, 426 N.Y.S.2d 274, 286-87 (App. Div. 1980)
(quoting Lawyers' Co-Operative Pub. Co. v. W. Pub. Co., 352 N.Y.S. 1120, 1123 (App. Div.
1898)) (internal citation marks omitted)."

      *Cf* Cabello-Rondón v. Dow Jones & Company, Inc., 2017 WL 3531551, at *6 n. 3
(S.D.N.Y. Aug. 16, 2017)

      To synthesize the rule, it states: Headlines are not actionable if they 1) fairly index the

subject matter to which they refer; and 2) they are a fair index of the matter contained in a

***truthful report***. Defendants also omit the guiding principle in determining outcomes of this rule.

*Schermerhorn* cites the 1898 case, *Lawyers Co-Operative* for the rule that: "In determining

---

[2] Plaintiff requests the Court take judicial notice of Mr. Portnoy's "One Bite, Everyone Knows the Rules" pizza
review series that has generated millions of views on YouTube and his variety of vulgar and offensive online
content related to his bawdy "Barstool Sports" publications.

whether headlines prefixed to a report are fair, they and the matter to which they refer must be construed together." Lawyers' Co-Operative Pub. Co. v W. Pub. Co., 32 AD 585, 590 [4th Dept 1898]. Thorough and correct research shows that truthfulness matters to the Court of Appeals. "Headlines are not privileged unless they are a fair index of the matter contained in a ***truthful report.***" Campbell v New York Evening Post, 245 NY 320, 328 [1927]. Blouin does not concede that either the French or the English headline is truthful and pleads that both are defamatory, especially when considered in context.

Here, Plaintiff alleges that the headlines are defamatory lies at worst and at best defamatory by implication. "For the purposes of a motion to dismiss" Courts "must take all of the factual allegations in the complaint as true…" Ashcroft v Iqbal, 556 US 662, 678 [2009]. Here, the allegations raised by the Complaint about the title are not pled to be a fair index of substantially accurate information in any sense. *See* Dkt No. 1, ¶¶ 1, ¶3, 19, 22, 25, 42, 46, 55, *inter alia*. Plaintiff clearly pleads that these headlines are defamatory, untrue, and harmful. Therefore, Blouin's defamation *per se* claim should survive this motion to dismiss.

### B.  The Defamation with Actual Malice Claim Should Remain Because It Is Properly Pled

#### i.  Actual Malice is Plausibly Alleged

Plaintiff has pled actual malice plausibly. The standard to prove actual malice requires "showing that an allegedly defamatory statement was made with knowledge that it was false or with reckless disregard of whether it was false or not. The concept of reckless disregard includes when a defendant acts with a high degree of awareness of the published statement's probable falsity or entertains serious doubts as to its truth." *Cf* Palin v New York Times Co., 113 F4th 245, 262 [2d Cir 2024](Cleaned up). The complaint adequately alleges both the reckless disregard and the knowledge of falsity. Dkt No. 1, ¶¶ 2, 3, 4, 7, 53-55, 56. For example, in ¶3

Blouin explains that she provided Vanity Fair with "with extensive documentation, including verified court filings, financial records, and formal correction requests. These materials rebutted central claims in the article, including the false implication that Plaintiff had "lost" La Dune through irresponsibility rather than strategic litigation to fend off coercive creditors." Dkt. No. 1, ¶3. Blouin goes on to plead as follows:

"4. Nonetheless, Vanity Fair proceeded with a reckless and sensationalist narrative built on the statements of conflicted sources—among them, a self-styled "consultant" under investigation for misconduct and individuals tied to predatory hard-money lenders seeking to coerce equity from Plaintiff's real estate assets. The article failed to disclose these sources' motives or the broader financial context, instead presenting their allegations as credible without independent corroboration.

5. Defendant Condé Nast, through its editorial staff, approved and published inflammatory and misleading headlines, falsely suggesting Plaintiff's financial ruin and professional collapse, despite her documented success as founder and former CEO of Trader.com, her leadership in global arts philanthropy, and her record of profitable investments exceeding $200 million across the technology, media, and real estate sectors.

6. These publications were disseminated internationally"

Dkt No. 1, ¶¶4-6.

This more than adequately states the case that Defendants knew what the actual status of Blouin was, yet, with reckless disregard for the truth or knowledge that the statements they were about to publish were false, they went ahead with the publication anyway. The actual malice standard is not carte blanche for publishers to say whatever they wish about public figures, no matter how sensational and damaging. In the recent landmark case of *Carroll v. Trump*, the Second Circuit ruled that "a court typically will infer actual malice from objective facts such as the defendant's own actions or statements, the dubious nature of his sources, and the inherent improbability of his story among other circumstantial evidence. Whether defendant in fact entertained serious doubts as to the truth of the statement may be proved by inference, as it would be rare for a defendant to admit such doubts." Carroll v Trump, 151 F4th 50, 71 [2d Cir

2025](Cleaned up). Similarly to the case of E. Jean Carroll, here, Blouin pleads that Defendants must have known what the truth was because she proffered documents and told them what the truth was. *Eg* Dkt No. 1, ¶¶3-6. Therefore, Blouin has pled that Defendants could "only conclude that" they "knew that [their] statement" was false. Carroll v Trump, 151 F4th 50, 71 [2d Cir 2025].

Similar to Trump's comments about E. Jean Carroll, Plaintiff has pled ill will, which supports a final determination of actual malice, by Vanity Fair and Conde Nast, in supporting the narrative of her adversaries. "Evidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of actual malice." Carroll v Trump, 151 F4th 50, 72 [2d Cir 2025]. Plaintiff alleges ill will by Defendants Vanity Fair, Conde Nast, Bonvicino, and others. *See* Dkt No. 1, ¶¶27, 34, 36, 68, *inter alia*. Blouin alleges that Vanity Fair and Conde Nast published their articles despite knowing that "Bonvicino was not authorized to speak on Plaintiff's behalf and had previously been directed to cease misrepresenting her affiliation" because Blouin told them that she was not authorized to speak on her behalf. Dkt No. 1, ¶30. Blouin also alleges that Defendant Allerding, an attorney suing Blouin, made on-the-record statements to Vanity Fair that reinforced the article's defamatory narrative" yet neither Vanity Fair or Conde Nast disclosed this fact. Dkt No. 1, ¶34.

Defendants cite *Gross, Loeb, Gu,* and *Shumman* to support their position that ill will is not probative of actual malice as a matter of law. These cases are squarely superseded by Carroll v Trump, 151 F4th 50, 72 [2d Cir 2025]. None of the cases cited by Defendants are more recent than *Carroll*, nor do they originate from the Second Circuit or the United States Supreme Court. Mainly, Defendants rely on *Gu*, an unpublished slip opinion from New York Supreme

Court that is not selected for official publication. "Unpublished decisions or opinions have no precedential value other than the persuasiveness of their reasoning." Yellow Book of NY L.P. v Dimilia, 188 Misc 2d 489, 490 [NY Dist Ct 2001]; *Accord* Dubai Islamic Bank v Citibank, N.A., 126 F Supp 2d 659, FN 14 [SDNY 2000]("Although entitled to respectful consideration, such decisions are of little (or no) precedential value."). In *Gu* the plaintiff was an unrepresented social justice activist who filed a case *pro se*. The main distinguishing fact from this case is that Dr. Gu, *pro se*, did not "dispute key factual statements that the subheading merely summarizes." Gu v. The Verge, 2023 WL 4599522, at *13 (Sup. Ct. N.Y. Cty. July 18, 2023). Here, Blouin does dispute the factual statements and the heading in her case is not a summary, it implies that she is financially troubled, went personally bankrupt, and is a lending risk. These are lies. She does not concede the factual statements produced by Defendants are true. Supreme Court also found *Gu* was suing over a statement of pure opinion – a recitation of facts and the opinion that it was based upon. Here, Defendants tell a false story that defames Blouin and that makes her look financially irresponsible, they do not make a statement of pure opinion. Finally, *Gu* is distinguishable because Dr. Gu only pled "conclusory allegations with respect to malice." *Id* at 24. Here, Blouin pleads with significant factual detail. Therefore, the Court should disregard *Gu*.

Additionally *Brimelow*, is a summary order from the Second Circuit. It too, does not have precedential effect. Per the first page of *Brimelow*:

**"RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL"**

Brimelow v. New York Times Co., 2021 WL 4901969, 1 (2d Cir. Oct. 21, 2021)

Under Second Circuit Local Rule 32.1.1.(c) when citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). Here, there is no notation that it is a summary order in the adversary's brief. It was only through checking citations that counsel uncovered this. Accordingly, this case should be disregarded and further doubt should be cast on the credibility of Defendant's research.

With respect to actual malice, Defendants, again, argue incorrect law. Defendant at first, cites *Biro* for the pleading standard for actual malice. But they veer off course. As they go on, they cite *Harte Hanks, St Amant,* and *Garrison* for positions about the substantive law of actual malice rather than what the plaintiff needs to advance at the pleading stage. Contrary to the contentions of Defendants, the specifics of the allegations of actual malice do not need to be developed until "after discovery has been completed" and "it will be the burden of plaintiff... to prove that defendant[s]... remarks were false and that they were made with actual malice." Alianza Dominicana, Inc. v Luna, 229 AD2d 328, 329 [1st Dept 1996]; *accord* Neuschotz v Newsday Inc., 12 Misc 3d 1199(A) [Sup Ct 2006]("This court finds that the analysis set forth in the *Alianza* decision is more appropriate in and in accordance with the liberal pleadings provisions... particularly in the context of a pre-answer motion to dismiss the complaint."); *Accord* People ex rel. Spitzer v Grasso, 21 AD3d 851, 853 [1st Dept 2005](Whether a party will "be able to sustain his burden of proving actual malice at trial cannot be determined at this pre-discovery stage of the litigation"); *Accord* Arts4All, Ltd. v Hancock, 5 AD3d 106, 110 [1st Dept 2004](non-specific allegations alleged actual malice and survived motion to dismiss); *Accord* Mellen v Athens Hotel Co., 153 AD 891, 891 [1st Dept 1912](A "plaintiff would have the

15

burden of proving malice upon the trial… [w]here a complaint sets forth the fact that the matter was published maliciously…").

Defendant argues the article does not imply that Plaintiff is personally bankrupt. That is not the case. The Defendant intentionally and maliciously blurred the critical distinction between a corporate Chapter 11 restructuring involving two affiliated corporate entities (Brickchurch and Aberdeen Enterprises) and the Plaintiff's personal finances. Dkt No. 1 at ¶20, 42. By failing to emphasize this distinction, the article weaponized a complex corporate legal proceeding for maximum sensational effect, creating the false and defamatory implication of personal financial collapse, which directly harms her ability to function in her profession as an investor and fund manager.

The article's focus was not to neutrally report. Instead, its purpose was to exploit the court filing to manufacture a scandal about the Plaintiff's life. When a publisher uses facts from a public record to convey a false impression or implication—such as turning a corporate restructuring into a story of personal ruin—they forfeit any claim of privilege or substantial truth.

The article's use of anonymously-sourced quotes, such as the one suggesting the Plaintiff was "liv[ing] above [her] means," is particularly egregious. Dkt No. 1, ¶22. The speaker is identified as a "banker" who had reviewed her refinancing request, giving the statement the veneer of an informed, professional judgment based on undisclosed facts about her personal financial condition. This is a serious professional accusation of financial irresponsibility that directly impacts her career and is therefore actionable.

The Defendant's conduct was a deliberate choice to prioritize a hostile narrative over verifiable facts. The results of the article speak for themselves. The statement "Like Trump, Blouin has never filed for personal bankruptcy," cannot be reasonably read to mean that Plaintiff

was anything other than a financial liability and personally bankrupt when in fact she was not. The implication being, that Blouin was like Donald Trump, who has a successful veneer but whose corporate bankruptcies, frauds, and crimes make him a significant liability.[3,4] This implication landed hard, creating uncertainty among Blouin's business partners, philanthropic concerns, *inter alia*, harming her severely. *See* Dkt No. 1, ¶¶37-43.

Defendants provide the Bolger Declaration to support their motion and supplies Exhibits outside the pleadings. Under Rule 12(d), "the court may exclude the additional material and decide the motion on the complaint alone." The Second Circuit explains that "a district court errs when it "consider[s] affidavits and exhibits submitted by" defendants on motions to dismiss. Friedl v City of New York, 210 F3d 79, 83 [2d Cir 2000].  Although Defendants rely on *Rapoport v. Asia Electronics Holding Co.*, for the position that the documents should be introduced into consideration, neither *Rapoport* nor the case that *Rapoport* relies upon for their position, *Feick v. Fleener,* are defamation cases. Their context is totally different. Therefore, Plaintiff respectfully submits that the Bolger Declaration and its annexed exhibits should not be considered when the Court decides this motion.

ii. *The First and Second Claims Should Remain Because §74 of the Human Rights Law Does Not Apply*

Defendants argue that the First and Second Claims should be dismissed because they are absolutely privileged under §74 of New York's Civil Rights Law. However, instead of an argument, Defendant merely cites a number of cases and does not articulate *why* Conde Nast and

---

[3] Trump's daughter Ivanka, in the 2003 documentary Born Rich, once referred to her father's massive debts by example. She described him as once pointing to a homeless man in the street and uttering "You see that guy over there, he has eight (8) billion dollars more than me."

[4] The Appellate Division, First Department found that President Trump presented many instances of corporate malfeasance and therefore "Supreme Court had ample bases to find that defendants would continue to engage in fraudulent and illegal activity." People by James v Trump, 237 NYS3d 443, 511-12 [1st Dept 2025]

Vanity Fair's mendacious lies should be privileged. Instead, they veer into use of evidence that originates beyond the four corners of the Complaint. Pursuant to Rule 12(d) this evidence should not be considered by the Court.

Assuming for a moment that Defendant's Declaration and exhibits are considered and not stricken under Rule 12(d), the fair report privilege does not apply because of the 1977 case of Edwards v Natl. Audubon Soc., Inc., 556 F2d 113, 120 [2d Cir 1977]. There Chief Judge Kaufman cited a "neutral reporting privilege" which has been repeatedly upheld by the Second Circuit. Earl K. Cantwell, The Controversy over Media Reporting of Public Disputes, NY St BJ, April 1988, at 22, 23. This failure to even articulate the correct standard shows that Defendant's research lacks credibility.

Under the neutral reporting privilege a "publisher who in fact espouses or concurs in the charges made by others, or who deliberately distorts these statements to launch a personal attack of his own on a public figure, cannot rely on a privilege of neutral reportage." Edwards v Natl. Audubon Soc., Inc., 556 F2d 113, 120 [2d Cir 1977]; Cianci v New Times Pub. Co., 639 F2d 54, 68 [2d Cir 1980]; Khalil v Fox Corp., 630 F Supp 3d 568, 581 [SDNY 2022](Defamation per se claims by Venezuelan against Lou Dobbs and Fox News for claiming he fixed the 2020 election and committed "electoral 9-11" survived 12(b)6 motion, personal attack cited a reason that neutral reporting privilege did not apply.) Lasky v Am. Broadcasting Companies, Inc., 631 F Supp 962, 971 [SDNY 1986](Summary judgment denied where defendants "elicited the statement in question and no controversy raged around the statement until the defendant brought it about" regarding the *downfall* of teacher accused of being a communist. Broadcast selectively omits that teacher sued accuser for slander.) Lasky v Am. Broadcasting Companies, Inc., 631 F

Supp 962, 970 [SDNY 1986]; *Compare* allegations of *downfall* in *Lansky* at 971 *with* Dkt No 1, ¶25 – French Vanity Fair article title "The Fall of a Socialite."

The neutral reporting standard applies, not the fair reporting privilege. First, the Complaint alleges that Plaintiff provided the journalist with advance corrections and supporting documentation clearly delineating the corporate nature of the bankruptcy as a strategic restructuring. The Defendant ignored this. Plaintiff pleads that the Defendants chose to heavily rely on the comments of known adversarial parties, including the lawyer for the opposing lender (John Allerding) and Melanie Bonvicino, despite written warnings of their deep financial and reputational conflicts. By knowingly embracing one-sided, hostile, and biased sources and ignoring the Plaintiff's verified evidence, the Defendant chose to publish a sensational lie rather than the boring truth.

Fundamentally, the neutral reporting privilege does not apply because Vanity Fair and Conde Nast selectively omitted everything that contradicted their false narrative that Blouin had suffered financial collapse. This demonstrates a reckless disregard for the truth and a deliberate personal attack on Blouin. *See* Cianci v New Times Pub. Co., 639 F2d 54, 69 [2d Cir 1980]("What's material to me is… failure to reveal facts undermining the credibility of such critical figures" in a newspaper impliedly accusing a mayoral candidate of paying off rape victim to not prosecute.) In *Cicani*, the alleged victim and her attorney, refused to cooperate with reporters and provided a narrative that disputed the newspaper's theory that the mayor raped the alleged victim. However, reporters omitted the attorney's statement that "a crime did not occur. That's my that's our position.," and pressured and threatened the victim to give details that supported the narrative that the mayor raped her. *Id* at 70. Similarly, here, Conde Nast and Vanity Fair chose to ignore all of the evidence provided by Blouin that goes against their

narrative of Blouin's financial irresponsibility, *inter alia*, and bolster the claims made by those with an axe to grind against her.

The Defendant points to the inclusion of the Plaintiff's quote, "I'm not bankrupt. That's nonsense," as proof that they lacked malice. However, in context, this quote does not absolve the publisher. Instead, the placement of a small, defensive denial in an article whose entire premise, title, and narrative structure are built to undermine and contradict that very denial is evidence of intentional malice. The publisher used the denial only to create the appearance of fairness while actively guaranteeing the overall false implication would prevail for the average reader.

Additionally, Defendants argue that the anonymously sourced quotes are not actionable because they are statements of opinion and that readers would likely believe they are statements of opinion. As argued *infra*, this is not correct. As pled, actual readers did read the article and concluded the anonymously sourced quotes were factual and meaningful with real and severe consequences to Blouin. Dkt No. 1, ¶37-43. The cited language by the adversary referencing "Grey Gardens" and "living above her means" *implies* that Blouin is financially irresponsible, is a lending risk, and is not suitable for business relationships. *See infra* at 5, §A and *passim*.

To support this erroneous position, Defendants again, cite another non-precedent summary order, *Torain*. This case has no precedential value so it should be ignored.

The other case Defendants cite, *Chau*, refers to *The Big Short* "a book, as opposed to a newspaper or a magazine" like Vanity Fair or Conde Nast. Chau v Lewis, 935 F Supp 2d 644, 659 [SDNY 2013], affd, 771 F3d 118 [2d Cir 2014]. The cases are distinguishable because as the Southern District explains an "average reader would easily determine that *The Big Short* represents Lewis's one-sided view of the people and events related to the collapse of the financial markets. Moreover, the criticisms and negative opinions personally expressed by Eisman toward

CDO managers in general, and Chau individually, are clearly his own personal perspective" not "a definitive history" unlike the article in this case which is presented as an objective historical review of Blouin's current situation. Chau v Lewis, 935 F Supp 2d 644, 660 [SDNY 2013], affd, 771 F3d 118 [2d Cir 2014].

Based on the foregoing the defamation claims should survive this motion to dismiss because they are plausibly pled, allege actual malice, allege untruth, allege special damages, *inter alia*.

## II. THE NON-DEFAMATION CLAIMS ARE VIABLE

This is a case in Federal Court, not New York State. The Second Circuit has ruled that "Although the New York courts have not yet recognized a common law right of privacy, if we were required to reach the question, we would be inclined to agree with the court below that when again faced with the issue the Court of Appeals may well modify or distinguish its 1902 holding in Roberson v. Rochester Folding-Box Co., 171 N.Y. 538, 64 N.E. 442 (1902), that "The so-called right of privacy has not as yet found an abiding place in our jurisprudence." There is substantive support today for the proposition that privacy is a "basic right" entitled to legal protection, Time v. Hill, 385 U.S. 374, 415, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (Fortas, J., dissenting), nor can the "power of a State to control and remedy such intrusion [even] for news gathering purposes . . . be denied." *Id.* at 404, 87 S.Ct. at 550 (Harlan, J., concurring and dissenting). Privacy essential to individual dignity and personal liberty underlies the fundamental rights guaranteed in the Bill of Rights." Galella v Onassis, 487 F2d 986, 995 [2d Cir 1973]. "Crimes and torts committed in news gathering are not protected" by the First Amendment. Galella v Onassis, 487 F2d 986, 995 [2d Cir 1973]. "The First Amendment is not a shibboleth before which all other rights must succumb." Le Mistral, Inc. v Columbia Broadcasting Sys., 61

AD2d 491, 494 [1st Dept 1978]. This case gives the Court an opportunity to expand the interpretation of New York's state law at the federal level and find a right to redress for false light torts. Defendant's selective omissions- including omitting her leading role in a $200,000,000.00 portfolio in publishing, tech and real estate, framing Blouin as an irresponsible socialite who suffered financial collapse, distortion of her career accomplishments, implication of mental instability, and broadcasting of that false light have severely harmed Blouin and the Court has the opportunity to make that right. Dkt No. 1, ¶¶58-64. Despite the restrictive interpretation of the law under New York's current regime, Plaintiff implores the Court to invoke its equity power to fashion a remedy. "Equity will not permit a wrong to remain unrighted if there is any possible way to remedy the situation." Ilyin v Avon Publications, Inc., 144 F Supp 368, 374 [SDNY 1956]. *See also* Trump v CASA, Inc., 606 US 831, 908 [2025](J. Sotomayor, Dissenting)("Courts of Equity delight to do justice, and not by halves").

The four elements necessary for plaintiff to allege a claim for tortious interference with contractual relations are: "1) The existence of a contract between plaintiff and third party; 2) Defendant's knowledge of the contract; 3) Defendant's intentional inducement of the third party to breach or otherwise render performance of the contract impossible; and 4) Damages to plaintiff." § 3:13. Tortious interference with contractual relations—Checklist of elements, 14 N.Y.Prac., New York Law of Torts § 3:13(Citing Kronos, Inc. v AVX Corp., 81 NY2d 90, 94 [1993]).

Defendants argue that plaintiff's tortious interference with prospective economic advantage claim is duplicative of the defamation claim. The defamatory article was a specific wrongful act intended to torpedo the Plaintiff's known and ongoing business ventures. The article itself mentions the Plaintiff's intention to raise $400 million for a real estate fund. Dkt No.

21 at 12. Publishing a story of personal financial ruin and irresponsibility while she is in the crucial stage of raising a massive fund is a direct and targeted attack on a specific, identifiable prospective business relationship. The article was published with the malicious intent to destroy her ability to secure that capital, making this claim entirely distinct and viable. Dkt No. 1, ¶¶65-70. Blouin pleads this. Therefore, the tortious interference claim is plausible and should remain.

Defendants rely on *Hengjun, Restis,* and *Wexler,* for the argument that the entire injury alleged in the tortious interference claim flows from reputational harm, making it duplicative of the defamation claims. But each of these cases is distinguishable or not binding precedent. *Hengjun* is another summary order with no precedential value that does not comply with Local Rule 32.1.1. *Restis* and *Wexler* are cases where the *only* plausible reading of the complaint was that the harms that befell the plaintiff flowed from harm to their reputations. Here, however, the Complaint cites Defendant Bonvicino's subterfuge and intentional interference by passing along information with intent to damage Blouin's "position in ongoing transactions and litigation." Dkt No. 1, ¶68. The origin of the harm is therefore not reputational damage, but intentional interference by Bonvicino, which Conde Nast and Vanity Fair aided and abetted. *Id* at ¶67. This directed harm comes not from injury to her reputation, instead it comes from Bonvicino's subterfuge and intentional interference, with knowledge that showing Blouin was a lending risk would interfere with her deals. Conde Nast and Vanity Fair assisted Bonvicino by disseminating his targeted attack.

Additionally, the tortious interference claim should survive because a tortious interference claim is not duplicative of a defamation claim where some, but not all, defendants, are the same. ExpertConnect, LLC v Fowler, 18 CIV. 4828 (LGS), 2020 WL 3961004, at FN 1 [SDNY July 13, 2020]. Here, Blouin brings the first two claims for defamation per se and

defamation with malice against Conde Nast and Vanity Fair. But, similarly to *Expert Connect* a different defendant is sued (Defendant Bonvicino) as well. Therefore, the tortious interference claim should remain. Additionally, "when the gravamen of a complaint is economic injury, rather than merely reputational harm" tortious interference claims withstand motions to dismiss at the state level. Amaranth LLC v J.P. Morgan Chase & Co., 71 AD3d 40, 48 [1st Dept 2009]. The damages alleged are specific economic damages, not mere reputational harm. Dkt No. 1, pg. 13 ¶(d) "*Eg* lost refinancing, canceled partnerships, and disrupted investment negotiations" *and Id* at ¶67-68 ("Bonvicino acted with the intent to damage Plaintiff's position in ongoing transactions and litigation. wrongful conduct directly caused one or more financing counterparties to withdraw from negotiations and harmed Plaintiff's ability to secure support for pending business ventures.") Thus, the tortious interference claims should survive.

## CONCLUSION

Vanity Fair and Conde Nast's motion to dismiss should be denied because Blouin's defamation claims are true, pled properly, and the articles they are based on are not subjected to privilege. The false light claim should have wind blown into it with the Court's equity power and the tortious interference claims should be preserved because it is not duplicative of the defamation claims. In sum, Vanity Fair and Conde Nast must be held accountable for the invidious lies they published about Ms. Blouin. Blouin respectfully entreats this Honorable Court to preserve her Complaint so that she may make her voice heard and correct the vile untruths levied at her.

[SIGNATURE PAGE FOLLOWS]

Dated: October 30, 2025

HANTMAN & ASSOCIATES
www.hantmanlaw.com

By:_ Robert J. Hantman_____
*Attorneys for Plaintiff*
1120 Avenue of the Americas, 4th Floor
New York, New York 10036
Tel: (212) 684-3933