UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------------x
LOUISE BLOUIN,  :
                              Plaintiff,  :  Case No: 25 Civ. 5425 (GBD)

              - against -  :

VANITY FAIR, CONDE NAST, MELANIE :
BONVICINO, JGB CAPITAL L.P., BAY POINT :
CAPITAL PARTNERS II L.P., and JOHN :
ALLERDING,  :

                          Defendants  :
.                                                     x
------------------------------------------------------------------------------------

# DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition" or "Opp.") confirms that her claims are meritless. Plaintiff brings this lawsuit to punish Defendant for not adopting her narrative surrounding the "court-ordered" sale of La Dune. To do this, Plaintiff advances an implausible reading of the Article, refuses to engage with the factual material incorporated by reference in her Complaint ("Compl."), and misrepresents Defendant's arguments. But none of Plaintiff's arguments are persuasive and this Court should dismiss her claims with prejudice.

I.   **PLAINTIFF'S DEFAMATION CLAIMS SHOULD BE DISMISSED**

   A.   **Plaintiff's First Claim, For Defamation Per Se, Must Be Dismissed**

In the Motion to Dismiss ("MTD"), Defendant argued that the Article is not defamatory of Plaintiff *per se* because it does not, on its face, disparage Plaintiff in her profession. MTD at 7-8. In response, Plaintiff makes two baseless arguments. *First*, Plaintiff claims that the article is defamatory because she alleges it is untrue. Opp. at 4-5. This argument is incorrect. Plaintiff does not dispute the Article's fundamental accuracy. *See infra* at 4-5. Additionally, defamatory meaning and truth are two entirely different elements. *See Jacob v. Lorenz*, 626 F. Supp. 3d 672, 686, 689-90 (S.D.N.Y. 2022) (listing the elements on defamation to include "a false statement about the complainant" and noting that under New York Law "[a] plaintiff in a libel action must identify a plausible defamatory meaning of the challenged statement or publication").

*Next*, in response to Defendant's argument that Plaintiff cannot plead defamation *per se* by reference to extrinsic evidence because the claim must be based, as a matter of law, on the content of the Article itself, Plaintiff claims that *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.* "states the opposite" of this proposition. Opp at 8. This, too, is incorrect. In fact, the *Daniels* court held that "a statement cannot be *defamatory per se* if reference to extrinsic facts is necessary to give it a defamatory meaning." 2003 WL 22410623, at *5 (S.D.N.Y. Oct. 21, 2003). *Daniels*, in fact,

supports Defendant's argument.[1]

Finally, and as expressed thoroughly in both the Motion to Dismiss and *infra*, Plaintiff's defamation per se claim suffers from the same deficiency that infects her entire Complaint—the Article, when read as a whole, simply cannot be read to impute personal financial insolvency to Plaintiff. *See generally* MTD; *see* also *infra* at 2-4. The defamation per se claim must be dismissed.

### B.     The Complaint Does Not Allege A Claim For Defamation By Implication

Next, Plaintiff argues that she has alleged a claim for defamation by implication because the titles of both the English and French versions of the Article falsely imply that "Blouin is a financial liability" and was "personally unable to keep the La Dune estate." Opp. at 5. As set forth more fully in the MTD, however, no reasonable reader would understand the Article to convey that defamatory implication because the Article expressly disclaims it. *See* MTD at 17. And it does so in far more than, as Plaintiff claims, one "single, contradictory quote deep within the text," Opp. at 4. In fact, the Article contained four separate references—including in Plaintiff's own words—that undercut Plaintiff's allegedly defamatory meaning. Specifically, the Article quoted Plaintiff twice (once in bold letters) saying "I'm not bankrupt. That's nonsense." To drive the point home, the Article stated, "Like Trump, Blouin has never filed for personal bankruptcy" and made clear that it was the "compound," that was "in bankruptcy protection." The Article also closed by describing Plaintiff's plans to "raise $400 million to buy $1 billion worth of trophy real estate for

---

[1] Plaintiff spends much of the brief suggesting that the court should ignore Defendant's citations because, she claims, they have no precedential value, or they are from another jurisdiction, or because Defendant abbreviated quotations for space. *See, e.g., Brimelow v. New York Time Co.*, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) (summary order); *Torain v. Liu*, 279 F. App'x 46 (2d. Cir. 2008) (summary order); *Gu v. The Verge*, 2023 WL 4599522 (Sup. Ct. N.Y. Cty. July 18, 2023). But these arguments are meritless. *See Liana Carrier Ltd. v. Pure Biofuels*, 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015) ("courts in the Second Circuit have often noted that unpublished opinions and Summary Orders from the Second Circuit Court of Appeals, while not binding, can be instructive to district courts in resolving particular disputes, and also may be seen as highly persuasive and predictive of how the Second Circuit Court of Appeals would decide an issue in the future.") And, in any event, Defendant cites plenty of persuasive, precedential authority for those same points. *See, e.g.,* MTD at 21 (citing *Brimelow* and *Jacob v. Lorenz*, 2023 WL 4106298 (S.D.N.Y. June 21, 2023); *id.* at 27-28 (citing *Gu* and collecting five additional cases); *id.* at 22 (citing *Torian* and *Chau v. Lewis*, 935 F. Supp. 2d 644, 660 (S.D.N.Y. 2013).

her own real estate fund" and including Plaintiff's quote that "The most important thing is to capture my business, not my social life . . . All my life I've had fantastic success. I don't have to prove myself. . . The truth will prevail." MTD Ex. A at 6-9. In short, the full context of the Article, which not only correctly described the La Dune bankruptcy, but also discussed Plaintiff's financial success, undercuts Plaintiff's claim that the Article defamed her by describing her as a financial liability.[2]

For this reason, Plaintiff's citations to *Higgins v. Goyer,* 162 A.D.3d 1191 (3d Dep't 2018), and *Zuckerbrot v. Lande,* 75 Misc. 3d 269 (Sup. Ct. N.Y. Cty. 2022) are unavailing.[3] In those cases, unlike in this one, there was nothing in the allegedly defamatory publication to undercut the alleged defamatory meaning.

In addition, in the face of Defendant's argument that the Complaint must be dismissed because she did not plead that the Article could be read to show "that Defendant[ ] intended or endorsed the alleged defamatory inference," *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 469 (S.D.N.Y. 2012), *see* MTD at 16, Plaintiff simply pretends she was not obligated to do so. She is wrong. In particular, she cites the decision in *Goldfarb v. Channel One Russia* to argue that the "intended or endorsed" standard articulated in *Biro* do not apply in cases "of allegedly false

---

[2] Plaintiff further argues that because "the allegations raised by the Complaint about the title are not pled to be a fair index of substantially accurate information in any sense," and because the court must accept her conclusory allegations, she can assert a claim for defamation based solely on the headline without further examination. Opp. at 11. This is not the law. First, "it is for the Courts," not the Plaintiff, "to decide whether the words are susceptible of the meaning ascribed to them." *James v. Gannett Co., Inc.*, 40 N.Y.2d 415, 419 (1976). Moreover, "whether a headline is a fair index of the body of the article is a question of law" and "the dispositive inquiry is whether a reader could have concluded that the article was conveying defamatory facts." *BYD Co. Ltd. v. Vice Media LLC*, 531 F. Supp. 3d 810, 820 (S.D.N.Y. 2021) (internal citation omitted). As demonstrated *infra*, no reader having read the entire article could have concluded that that it was stating that Louise Blouin had filed for personal bankruptcy. Moreover, while Plaintiff complains that the title was not "nuanced," Opp. at 5, courts have held that even "unfortunate, sensationalist" headlines are not actionable if they are a fair index of the article. *BYD Co. Ltd*., 531 F. Supp. 3d at 819

[3] Plaintiff also asks this Court to reject the reasoning in *Portnoy v. Insider, Inc.*, 2022 WL 16748583 (D Miss. Nov. 7, 2022) because, Plaintiff believes, she has a better reputation that the plaintiff in *Portnoy*. But Plaintiff cites no case in support of her remarkable claim that the law is more protective of Plaintiff than Mr. Portnoy. Nor could she ever do so.

3

statements of verifiable fact, with inferences flowing from those facts." 663 F. Supp. 3d 280, 297 n.7 (S.D.N.Y. 2023). The problem for Plaintiff, however, is that Plaintiff does not base her defamation claim on false statements of fact. In fact, Plaintiff admits that her implication claim is based on the Article's statement that "Like Trump, Blouin has never filed for personal bankruptcy," and then proceeds to concede that phrase is "technically true." Opp. at 9. In other words, Plaintiff is not pleading that statements in the Article are "false statements of verifiable fact"—she is pleading they are true. *Goldfarb* is inapplicable, *Biro* governs, and Plaintiff has failed to state her claim for defamation by implication.

C.    **The Article Is An Absolutely Privileged Fair Report On A Judicial Proceeding**

Next, in the face of Defendant's argument that the Article is absolutely privileged under NY Civ Rights Law § 74 as a substantially accurate report on judicial proceedings, Plaintiff makes two unsuccessful arguments.

*First*, rather than argue that the Article misstates the content of the bankruptcy proceedings (which it does not), Plaintiff simply asks this Court to ignore them, insisting that Rule 12(b)(6) and 12(d) require this Court to consider *only* the allegations of the Complaint (even when those allegations are contradicted by those documents).[4] Plaintiff is incorrect. The bankruptcy materials, and the other materials attached to the Bolger Declaration, are incorporated by reference in the Complaint and the court may take judicial notice of them. *Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *1 (S.D.N.Y. Mar. 28, 2023) ("the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."); *Biro v. Conde Nast*,

---

[4] The Bolger Declaration contains four exhibits: the English and French versions of the Article (Exhibits A & B), an order from the bankruptcy proceeding underlying this action and published on the bankruptcy court's docket (Exhibit C), and a September 4, 2025 order of dismissal in Plaintiff's lawsuit against Bay Point Capital Partners II, LP, 2025 WL 2550003 (E.D.N.Y. Sept. 4, 2025) (Exhibit D).

4

2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2014) (holding that articles that form the basis of defamation complaints are incorporated by reference); *Simeone*, 2023 WL 2665444, at *2 (collecting cases and taking judicial notice of state court rulings and orders at the motion to dismiss phase). The Article correctly reports on the proceedings. *See* MTD 10-12.

Next, Plaintiff makes a confusing effort to argue that the fair report privilege does not apply because the neutral reporting privilege does not apply. But these are two entirely separate privileges. *Compare Edwards v Natl. Audubon Soc., Inc.,* 556 F. 2d 113, 120 (2d Cir. 1977) with N.Y. Civ. Rights Law § 74. And Defendant does not argue the neutral report privilege applies. On the contrary, as outlined in the MTD, Defendant argues that pursuant to N.Y. Civ. Rights Law § 74, the Article is a privileged fair report of Plaintiff's corporate bankruptcy. *See* MTD at 18-19. To borrow a phrase from Plaintiff, her arguments about the neutral report privilege are red herrings.

### D. The Article Is Substantially True

Next, in its Motion to Dismiss, Defendant argued that the Article was substantially true based on pleadings in the La Dune bankruptcy that were incorporated by reference in the Complaint. MTD at 20-21. Plaintiff's only argument to the contrary is, again, that this Court may not consider the documents attached to the Bolger Declaration. Opp. at 17-21. But, as discussed above, this Court can and should do so—particularly here where Plaintiff alleges that the alleged falsity of Defendant's reporting would have been established by "the full court docket showing all claims were corporate and not personal," Opp. at 6; Compl. ¶ 61. Because the documents that both parties agree are relevant establish the substantial truth of the Article, they should be considered on this motion, and the Complaint should be dismissed.

### E. The Anonymously Quoted Source Is Non-Actionable Opinion

Next, in the Motion to Dismiss, Defendant argued that statements in the Article about "when *people* live above their means" or comparing La Dune to "Grey Gardens" were statements

5

of nonactionable opinion. MTD at 21. In response, Plaintiff makes little attempt to dispute this, simply repeating her belief that these are statements of fact. Opp. at 20. Plaintiff then asks the court to just ignore the Second Circuit's decision in *Torain,* 279 F. App'x 47, because it has "no precedential value." Defendant disputes that (*see supra* at 2), but in any event, the principle that statements not "capable of being proven true or false" are statements of opinion, is well established. *See Brian v. Richardson*, 87 N.Y.2d 46, 51(1995). Finally, Plaintiff attempts to distinguish *Chau v. Lewis* by arguing that the case concerned a book rather than an article. But that is a distinction without a legal difference—statements that "lack[] precise meaning" are non-actionable opinions regardless of the medium in which they are expressed. Here, the statements about living above one's means and "Grey Gardens" are nonactionable opinion.

### F. Plaintiff Fails To—And Cannot—Plead Actual Malice

Next, the MTD established that Plaintiff's defamation claims have to be dismissed on the independent basis that she failed to plead actual malice. In the Opposition, Plaintiff makes three arguments to save her claims. None are successful.

*First*, Plaintiff argues that the "specifics of the allegations of actual malice do not need to be developed" until the completion of discovery. Opp. at 15. This is incorrect. Courts in this district routinely dismiss defamation claims at the pleading stage for failure to plead actual malice. *See e.g., BYD Co., Ltd.*, 531 F. Supp. 3d at 826-27; *1st Amendment Praetorian v. New York Times Co.*, 2025 WL 949575, at *8-11 (S.D.N.Y. Mar. 28, 2025)**.**

*Second*, Plaintiff ignores Defendant's argument that when a defendant seeks comment from a plaintiff and includes the comment in the Article it undercuts any inference of actual malice. *See* MTD at 25. "Plaintiff's failure to oppose Defendant['s] specific argument in a motion to dismiss is deemed waiver of that issue." *BYD Co. Ltd.*, 531 F. Supp. 3d at 821. Here, Defendant twice included Plaintiff's specific denial that she was not personally bankrupt. This thoroughly undercuts

6

her contention of actual malice.

*Third*, Plaintiff argues that she adequately pleaded actual malice based on conclusory allegations in her Complaint that she provided Defendant with "extensive documentation, including verified court filings, financial records, and formal correction requests." Opp. at 12. As Defendant's opening motion explained, these conclusory allegations are not sufficient because Plaintiff does not state what these documents would have shown that was not already included in the Article. MTD at 25. Moreover, as Defendant argued in the MTD – and as Plaintiff does not dispute in the Opp – Plaintiff's emphatic denials are not probative of actual malice. *See id.* at 25-26; *see also Jacob*, 626 F. Supp. 3d at 692-93 (dismissing complaint for lack of actual malice in which plaintiff alleged to have provided "sufficient evidence in their prepublication responses that would cause a prudent and diligent person to entertain serious doubts about the truth of the allegations").

*Fourth*, Plaintiff alleges that she has pleaded actual malice because she pleaded Defendant acted with ill will. *See* Opp. at 16 (citing Compl. ¶¶ 27, 34, 36, 68). This argument has two problems – the first, is that Plaintiff, in fact, did not plead Defendant acted with ill will; she contended that Defendant's *sources* were "adversarial." *See* Compl. ¶¶ 31, 35. The second problem with her argument is that she overreads the one case on which she relies, *Carroll v. Trump*, 151 F.4th 50 (2d. Cir. 2025). Plaintiff claims that *Carroll* not only held that allegations of ill will are sufficient to plead actual malice, but also overturned all of the other cases cited by Defendant that established that such allegations are not probative of actual malice in and of themselves. Opp. at 13-14. But *Carroll* holds no such thing. On the contrary, *Caroll* observed in a footnote, and consistent with all the cases cited by Defendant, that "evidence of ill will *combined with other circumstantial evidence* indicating that the defendant acted with reckless disregard of the truth or

falsity of a defamatory statement may also support a finding of actual malice." *Carroll,* 151 F.4th. at 72 n.20. Here (unlike in *Carroll),* there is no such circumstantial evidence of knowing falsification and Plaintiff's allegations of ill will—even if she had made them— would be insufficient to plausibly allege actual malice.[5]

## II.   THE FALSE LIGHT CLAIM FAILS

In the MTD, Defendant argued that Plaintiff's false light failed because the claim, concededly, does not exist under New York law. In response, rather than simply abandon her meritless claim, Plaintiff argues, citing dicta from 1973, that this Court should overturn "well-settled" precedent and recognize false light as a tort. *See* Opp. at 21; MTD at 29 (collecting cases). But the New York Court of Appeals has never done so, which this Court recognized as recently as 2024. *Satz v. Organization for Resolution of Agunot Inc.,* 2024 WL 1330011, at *9 (S.D.N.Y. Mar. 28, 2024). There is no false light claim in New York and that is the end of the analysis. The claim must be dismissed.

## III.  THE TORTIOUS INTERFENCE CLAIM FAILS

Finally, in the MTD, Defendant established that the tortious interference with economic advantage claim (the "tortious interference claim") should be dismissed because it was duplicative of the defamation claim and because any alleged interference was incidental to Defendant reporting on newsworthy information. *See* MTD at 33. In response, Plaintiff first confuses the issue by listing the elements of a tortious interference with contract claim. Opp. at 22. But that is a different tort than the one alleged and has no relevance here.

---

[5] Plaintiff also argues that this Court can ignore *Brimelow v. New York Times Co.,* 2021 WL 4901969 because it was unpublished. Opp. at 14. Plaintiff's argument should be rejected because the case has been cited by 17 federal courts since its publication and, Courts in the Second Circuit "often note[]" the highly persuasive nature of Second Circuit summary orders. *See supa* at 2 n. 2. Moreover, Plaintiff fails to respond to Defendant's central claim, supported by both *Brimelow* and *Jacob v. Lorenz*, that courts in this district have rejected attempts to plead actual malice even when Plaintiff identifies a litany of insufficient factors.

Next, Plaintiff insists her tortious interference claim is not duplicative because she alleges that different claims are alleged as against different defendants.[6] Opp. at 23. But the sole case Plaintiff cites for this proposition, *ExpertConnect, LLC v. Fowler*, 2020 WL 3961004, (S.D.N.Y. July 13, 2020), actually proves why Plaintiff is incorrect. In that case, the tortious interference claim survived only as to the one party against whom only that claim was alleged; it was dismissed as duplicative against the defendant who was also named in the defamation claim. *Id.* at *5 n.1.[7] This Court should do the same here.

Finally, and most remarkably, Plaintiff simply ignores the well-settled Court of Appeals precedent that says that where, as here the Defendant has an expressive purpose in publishing the Article, there can be no claim for tortious interference. MTD at 30-31. There is no question that, as a matter of law, the claim for tortious interference should be dismissed.

## IV. CONCLUSION

For the foregoing reasons and the reasons articulated in Defendant's motion to dismiss, the Court should dismiss Plaintiff's Complaint with prejudice.

Dated: November 17, 2025

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

_Katherine M. Bolger_ (signature)

Katherine M. Bolger
Philip L. Golodetz
DAVIS WRIGHT TREMAINE LLP

---

[6] Notably, Plaintiff has failed to issue a summons for or otherwise serve any Defendants in this action with the exception of Condé Nast.

[7] Plaintiff's citation to *Amaranth LLC v. J.P. Morgan Chase & Co.* is puzzling. In *Amaranth*, plaintiff brought claims for breach of contract and tortious interference with economic advantage, but did not allege defamation as a separate, independent tort. As such, there was no argument that plaintiff's tortious interference claim was duplicative. *See* 71 A.D.3d 40, 45 (1st Dep't. 2009). Additionally, even if applicable, the court in *Amaranth* noted that one element of tortious interference is "that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort." *Id.* at 37. The sole "independent tort" that Plaintiff alleges that Defendant committed here is defamation. Thus, if Plaintiff's defamation claim fails, her tortious interference claim should be dismissed for the independent reason that she has failed to satisfy a key element of the tort.

1251 Avenue of the Americas, 21st Floor  
New York, New York 10020  
Telephone: (212) 489-8230  
katebolger@dwt.com  
philipgolodetz@dwt.com  

*Attorneys for Defendant Conde Nast*

### CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 3417 words. I certify under penalty of perjury that the foregoing is true and correct.

/s/ *Katherine M. Bolger*  
Katherine M. Bolger

### CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, a copy of the foregoing document was filed electronically and served by e-mail to all parties of record via ECF.

/s/ *Katherine M. Bolger*  
Katherine M. Bolger