**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LOUISE BLOUIN,                                                    :
                                                                 :
                                           Plaintiff,            :
                                                                 :          MEMORANDUM DECISION
                        -against-                                :              AND ORDER
                                                                 :
CONDE NAST, VANITY FAIR, JGB CAPITAL L.P.,                       :            25 Civ. 5425 (GBD)
MELANIE BONVICINO, BAY POINT CAPITAL                             :
PARTNERS II, L.P., and JOHN ALLERDING,                           :
                                                                 :
                                           Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Louise Blouin brings this action against defendants Conde Nast, Vanity Fair, Melanie Bonvicino, Bay Capital Partners II, L.P., and John Allerding alleging defamation, an invasion of privacy based on a false portrayal, and tortious interference with prospective economic advantage. (Compl., ECF No. 1, at 8–12.) On November 13, 2025, Plaintiff voluntarily dismissed without prejudice all claims against defendant JGB Capital L.P. (ECF No. 36.) Plaintiff also failed to serve defendants Melanie Bonvicino, Bay Capital Partners II, L.P., and John Allerding with the summons and complaint; these defendants have not appeared in this action. Accordingly, the only remaining defendants are Conde Nast and Vanity Fair (collectively "Conde Nast"). Before this Court, is Conde Nast's motion to dismiss the complaint. (*See* Mot. Dismiss, ECF No. 20.) The motion is GRANTED.

## I.    BACKGROUND

This action centers on a July 1, 2024, article (the "Article"), written by Jennifer Gould and published by Vanity Fair, titled, "How Art Mogul Louise Blouin Lost her Fabled Hamptons

Estate."[1]    (Article, ECF No. 22-1, at 1.)   In general, the Article reports the circumstances

surrounding Plaintiff's purchase and sale of "La Dune," an oceanfront estate in the Hamptons.

(*See id.* at 3.)  As reported in the Article, Plaintiff rose to prominence in the business and art worlds

as a co-founder of an "international classified ad empire" and investor in art publications.  (*Id.* at

3, 8.)  In 1997, Plaintiff purchased La Dune, and for years thereafter, Plaintiff hosted lavish, star-

studded parties at the estate.  (*Id.* at 3, 5–6.)  In 2023, La Dune was sold at auction as part of a

bankruptcy proceeding "filed by Plaintiff's affiliated corporate entities—Brickchurch Enterprises,

Inc. and Aberdeen Enterprises, Inc." (Compl. ¶ 20; *see also* Def. Mem., ECF No. 21, at 4–5 (citing

*In re: Aberdeen Enterprises, Inc. et al. v. Bay Point Capital Partners II, LP*, No. 24-CV-7744,

2025 WL 2550003, at *2 (E.D.N.Y. Sept. 4, 2025)).)[2]

     The Article contains several quotes from sources claiming to have knowledge of Plaintiff's

personal life and business dealings.  As relevant here, the Article quotes an unnamed banker that

turned down Plaintiff's request to refinance La Dune as stating, "When people live above their

means against assets they have or inherited in order to tread water, it typically doesn't end well. . . .

[La Dune] felt like Grey Gardens . . . ." (Article at 6.)  The Article also quotes several of Plaintiff's

ex-business associates who state, among other things, that Plaintiff suffered from "delusions of

---

[1] This Court will consider the Article's contents as the Plaintiff incorporated the Article by reference into her complaint and the Article is central to Plaintiff's claims.  *See Biro v. Conde Nast*, 883 F.Supp.2d 441, 455 (S.D.N.Y. 2012) (noting that "documents containing the allegedly defamatory statements" are incorporated by reference and deemed part of the pleading).  This Court will also consider the French translation of the Article, which the Plaintiff relies on throughout her complaint.  (*See* Compl. ¶ 25.)

[2] This Court takes judicial notice of the bankruptcy proceedings for Plaintiff's affiliated corporate entities.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("[W]here public records that are integral to a . . . complaint are not attached to it, the court, in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of those records.").

grandeur" and that it was "almost heartbreaking—or tragic—how she lost everything, even her real estate." (*Id.* at 4, 9.)

Gould interviewed Plaintiff twice for the Article, and quotes from these interviews appear throughout the piece. In an apparent response to a question about the bankruptcy proceedings, Plaintiff is quoted in the Article as saying, "I'm not bankrupt. That's nonsense. I've been attacked by predatory behavior. I had classic mortgages for many years. This was one real estate transaction out of so many. It's important to put it in perspective. We all make mistakes." (*Id.* at 6.) The Article also highlights Plaintiff's comments that she was the victim of a "massive fraud orchestrated by key members of her publishing team, to the tune of millions," and that "she wants to raise $400 million to buy $1 billion worth of trophy real estate for her own real estate fund." (*Id.* at 5, 9.)

On June 30, 2025, Plaintiff filed this lawsuit, bringing four claims. First, Plaintiff claims that the Article is defamatory *per se* because it "included false implications that Plaintiff filed for personal bankruptcy, defaulted on her home, and misrepresented her financial position." (Compl. ¶ 46.) Second, Plaintiff asserts a claim of "defamation with actual malice." (*Id.* ¶ 52.) She argues that she is a public figure and alleges that Conde Nast's "decision to frame Plaintiff as bankrupt, irresponsible, and socially disgraced, despite knowledge of the contrary, demonstrates reckless disregard for the truth." (*Id.* ¶¶ 52–56.) Third, Plaintiff claims that the Article was an invasion of privacy which "portrayed Plaintiff in a false light by selectively omitting context, exaggerating controversy, and framing Plaintiff as an irresponsible socialite who had suffered financial collapse." (*Id.* ¶ 59.) Fourth, Plaintiff claims that the Article contained "false and disparaging

3

claims that interfered with . . . prospective [transactions]," including "real estate transactions, refinancing, and the formation of a high-end real estate investment fund." (*Id.* ¶¶ 66–67.)

On October 6, 2025, Conde Nast filed the instant motion and a memorandum of law in support. (Mot. Dismiss; Def. Mem.) On October 30, 2025, Plaintiff filed her opposition. (Pl. Mem., ECF No. 32.) Conde Nast replied on November 17, 2025. (Reply, ECF No. 37.) On December 18, 2025, this Court heard oral argument on this motion.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citing Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims merely "consistent" with liability are insufficient, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 557. Where a state law claim is filed in federal court, a court must apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 416, 426–28 (1996). The parties agree that New York law governs Plaintiff's claims.

## III.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF

### A. Defamation Claims

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y.

4

2012) (citation omitted). Under New York law, a plaintiff alleging defamation must establish five elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). Additionally, "a public figure plaintiff must prove that an allegedly libelous statement was made with actual malice, that is, made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Church of Scientology Intern. v. Behar*, 238 F.3d 168, 173–74 (2d Cir. 2001) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).

"New York recognizes certain statements as defamatory per se, meaning they are actionable without pleading and proof of special damages." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000). In New York, there are four established categories of *per se* defamatory statements: statements "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992); *see also Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir. 2011).

Further, a plaintiff may successfully allege defamation where statements, while literally true, create "false suggestions, impressions and implications." *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 380–81 (1995). Plaintiffs alleging defamation by implication must "make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 44 (N.Y. App. Div. 2014). This is an "objective inquiry" that turns on whether the statements themselves "by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence

suggesting that the defendant intends or endorses the defamatory inference." *Partridge v. State of New York*, 100 N.Y.S.3d 730, 737 (N.Y. App. Div. 2019) (citation omitted).

Here, Plaintiff has failed to identify a false statement within the Article. Plaintiff gestures to the Article's title and the "statements of anonymous third parties," but only claims that these statements "did not tell the full story." (Pl. Mem. at 6.) Instead, Plaintiff argues that the entire Article, while technically accurate, creates a defamatory implication that the Plaintiff is "bankrupt, irresponsible, and socially disgraced." (Compl. ¶ 56.) Specifically, Plaintiff claims that by failing to emphasize the distinction between personal and corporate bankruptcy, the Article "weaponized a complex corporate legal proceeding for maximum sensational effect, creating the false and defamatory implication of personal financial collapse." (Pl. Mem. at 16.) Because Plaintiff is relying on the Article's supposed defamatory implication, both of her defamation claims hinge on whether she has sufficiently pled "that (1) the [Article] may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference." *Biro*, 883 F. Supp. 2d, at 466.

Plaintiff fails to meet this burden. The Article itself does not support the notion that Conde Nast intended or endorsed the defamatory inference Plaintiff alleges. The Article explicitly states that "Blouin has never filed for personal bankruptcy." (Article at 7.) Further, the Article quotes Plaintiff saying she is "not bankrupt," that she had been "attacked by predatory behavior," and that the sale of La Dune was just "one real estate transaction out of so many." (*Id.*) The Article also concludes by mentioning Plaintiff's plans to "raise $400 million to buy $1 billion worth of trophy real estate for her own real estate fund." (*Id.* at 9.) Far from endorsing the implication that Plaintiff was personally bankrupt and financially ruined, the inclusion of these contrary statements "seems calculated to prevent such an inference." *Henry v. Fox News Network LLC*, 629 F.Supp.3d 136,

6

150 (S.D.N.Y. 2022) (finding that a corporate statement did not endorse a defamatory implication because the statement intentionally included "nebulous" phrasing).

Because Plaintiff has failed to adequately allege a defamatory statement or implication, her defamation *per se* and defamation with actual malice claims are dismissed.

## B.  False Light

Plaintiff also alleges an invasion of privacy based upon Conde Nast publishing "content that portrayed Plaintiff in a false light by selectively omitting context, exaggerating controversy, and framing Plaintiff as an irresponsible socialite who had suffered financial collapse." (Compl. at ¶ 59.)  This claim fails because "New York does not recognize a separate cause of action for false light/invasion of privacy." *Henry*, 629 F.Supp.3d, at 151; *see also Porco v. Lifetime Ent. Servs., LLC*, 150 N.Y.S.3d 380, 386 (N.Y. App. Div. 2021) ("[N]either a false light claim nor any other common-law privacy tort exists in New York.").

Accordingly, Plaintiff's claim for false light/invasion of privacy is dismissed.

## C.  Tortious Interference with Prospective Economic Advantage

Finally, Plaintiff asserts a claim for tortious interference with prospective economic advantage, alleging that Conde Nast "knowingly published false and disparaging claims that interfered with" Plaintiff's attempt to a form a "high-end real estate investment fund." (Compl. ¶¶ 66–67.)

> Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).  New York courts, however, "treat harm stemming from injury to reputation as sounding in defamation, and do not recognize separate

torts as additional causes of action." *Goldman v. Barrett*, 733 F. Appx 568, 570 (2d Cir. 2018); see also *Henry*, 629 F.Supp.3d, at 153 n.11 (noting that plaintiff's tortious interference with prospective economic advantage claim could be dismissed as duplicative of their defamation claim).

Here, Plaintiff has failed to allege any facts that differentiate her tortious interference claim from her defamation claims. Critically, Plaintiff offers no explanation as to how Conde Nast's decision to publish the Article could have possibly "interfered with" Plaintiff's potential business dealings other than through general damage to her reputation. (Complaint ¶¶ 66, 69.) Accordingly, Plaintiff's tortious interference with prospective economic advantage claim sounds in defamation and is dismissed as duplicative. *See Ganske v. Mensch*, 480 F. Supp. 3d 542, 557 (S.D.N.Y. 2020) ("Without alleging an injury separate from the alleged reputational effects of the Tweet, Plaintiff's tortious interference claim is duplicative of his defamation claim."); *Chao v. Mount Sinai Hosp.*, No. 10-CV-2869 (HB), 2010 WL 5222118, at *11 (S.D.N.Y. Dec. 17, 2010) ("Where tort claims essentially restate a defamation claim that has been dismissed on a motion to dismiss, the tort claims must also be dismissed.").

## IV.    CONCLUSION

Conde Nast's motion to dismiss, (ECF No. 20,) is GRANTED. The Clerk of Court is directed to close the case accordingly.

Dated: New York, New York
February 3, 2026

SO ORDERED.

*GEORGE B. DANIELS*
United States District Judge

8